**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NETGEAR, INC.,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>) C.A. No. 1:21-1117-MN-CJB<br>) C.A. No. 1:21-1119-MN-CJB<br>) C.A. No. 1:21-1120-MN-CJB<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT NETGEAR, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware ("Local Rules"), Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Plaintiff" or "WSOU") hereby requests that defendant Netgear, Inc. ("Netgear" or "Defendant") serve WSOU with its written responses to these requests for production (the "Requests," and each a "Request") and produce copies of the documents and things requested below, pursuant to the definitions and instructions set forth herein, at the law offices of Devlin Law Firm LLC, 1526 Gilpin Avenue, Wilmington, DE 19806 within 30 days after service hereof. These requests for documents and things are continuing in nature. If, after producing the requested documents and things, Netgear obtains or becomes aware of any further responsive documents or things, Netgear must produce to WSOU such additional documents and things, as required by Federal Rule of Civil Procedure 26(e).

The following definitions and instructions shall apply to all requests herein:

1

## DEFINITIONS

Each Request in WSOU's First Set of Requests for Production of Documents is subject to and incorporates the following instructions:

1. "The '096 Patent" shall mean United States Patent No. 7,512,096.

2. "The '171 Patent" shall mean United States Patent No. 9,338,171.

3. "The '630 Patent" shall mean United States Patent No. 7,551,630.

4. "Actions" means the above-captioned lawsuits, *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Netgear, Inc.*, C.A. No. 1:21-1117-MN-CJB, *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Netgear, Inc.*, C.A. No. 1:21-1119-MN-CJB, and *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Netgear, Inc.*, C.A. No. 1:21-1120-MN-CJB, pending in the United States District Court for the District of Delaware.

5. "Accused Products" or "Accused Product" means and includes all past, current and future hardware and software products and services developed, made, used, offered for sale, sold, imported, and provided by Netgear that contain or makes use of the Accused Functionalities (defined below). Accused Products include, but are not limited to, the products and services specifically identified in the Actions and WSOU's Identification of Accused Products and Asserted Patents served on September 1, 2021 in each of the Actions, as well as products and services that operate substantially similar to the products and services specifically identified in the Actions. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed.Cir.2006); *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F.Supp.2d 650, 655-656 (E.D.Tex.2009); *Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07-CV-108, 2009 WL 3673253, at *2 (E.D.Tex. Sept. 2, 2009). Accused Products include, but are not limited to:

a. In connection with the '096 Patent: Netgear devices implementing MU-MIMO (including but not limited to Netgear Wireless Access Points, Netgear WiFi Routers, Netgear WiFi Mesh Systems, Netgear Whole Home Mesh WiFi, Netgear Cable Modem Routers, Netgear 4G WiFi Routers)

    i. Including but not limited to the following Netgear Wireless Access Points:
- Premium Wireless (WAC740) 802.11ac 4x4 Wave 2 Wireless Access Point
- Premium Wireless (WAC740) 802.11ac 4x4 Wave 2 Wireless Access Point
- Cloud Managed WiFi (WAC510) AC1300 Dual Band PoE Insight Managed Smart Cloud Wireless Access Point
- Cloud Managed WiFi 6 (WAX610)AX1800 Dual Band PoE Multi-Gig Insight Managed WiFi 6 Access Point

    ii. Including but not limited to the following WiFi Mesh Systems:
- Orbi Pro WiFi 6 (SXK80) AX6000 Tri-Band Orbi Pro WiFi 6 WiFi System
- AX6000 WiFi Mesh Router (SXR80) Tri-Band Orbi Pro WiFi 6 AX6000 WiFi Router (SXR80)
- Orbi Pro WiFi 5 (SRK60) AC3000 Tri-Band Orbi Pro Business WiFi System
- AX1800 WiFi Mesh System (SXK30) Orbi Pro WiFi 6 Mini AX1800 Mesh System (SXK30)

    iii. Including but not limited to the following Whole Home Mesh Wifi:
- AX6000 WiFi Mesh System (RBK853)
- AX4200 WiFi Mesh System (RBK753)
- Dual-band AX1800 2-Pack (MK62) Nighthawk Dual-Band WiFi 6 Mesh System

    iv. Including but not limited to the following Netgear WiFi Routers:
- AX6000 WiFi Router (RAX120)
- AX11000 WiFi Router (RAX200)
- AX6000 WiFi Router (RAX80)
- AC1600 WiFi Router (R6330)
- AC2000 WiFi Router (R6850)

    v. Including but not limited to the following Netgear Cable Modem Routers:
- AX6000 WiFi Cable Modem Router (CAX80)
- AX4200 WiFi Cable Modem Router (CBR750)

3

      vi. Including but not limited to the following Netgear 4G WiFi Routers
- AC2200 LTE Mesh Router (LBR20)

b. In connection with the '171 Patent: Netgear Access points (including but not limited to WAC505, WAC510, WAC720, WAC730).

c. In connection with the '630 Patent: Netgear stackable Gigabit Ethernet switches (including but not limited to M5300, M6100, M7100 series).

6. "Accused Functionalities" means the technologies described in the claims of the Patents-in-Suit, in the claim charts attached to the complaint in the Actions, and as described in Plaintiff's Infringement contentions.

7. "Bill of materials" means any documents that list the hardware components and parts used to assemble a finished product.

1. "Communication" means any form of oral or written interchange or attempted interchange, formal or informal, at any place or under any circumstances whatsoever whereby information of any nature is transmitted or transferred, including but not limited to any note, memorandum, letter, correspondence or other document, electronic mail message, telephone call, and/or conversation, discussion, meeting and/or other record thereof, or a single person seeing or hearing any information by any means.

2. "Communication" means any form of oral or written interchange or attempted interchange, formal or informal, at any place or under any circumstances whatsoever whereby information of any nature is transmitted or transferred, including but not limited to any note, memorandum, letter, correspondence or other document, electronic mail message, telephone call, and/or conversation, discussion, meeting and/or other record thereof, or a single person seeing or hearing any information by any means.

3. "Concern," "Concerning," "Relate," "Related" or "Relating" shall mean in connection with, referring to, regarding, referencing, reflecting, describing, discussing,

evidencing, supporting, indicating, containing, stating, mentioning, embodying, pertaining to, setting forth, commenting on, assessing, recording, constituting, comprising, touching upon, summarizing or having any logical or factual connection whatsoever to the subject matter in question.

4. "Date" means the exact day, month, and year if so ascertainable, or if not, the best approximation (including relationship to seasons and other events).

5. "Describe," when used with reference to a technology, means to (a) describe it with specificity; (b) identify all uses You have made, are making, or plan to make of it; (c) describe each system, service, method, or apparatus (including any research or engineering project) developed, made, used, imported, sold, or offered to sell in the United States by You, or that You intend to develop, make, use, import, sell, or offer for sale in the United States, that uses it; and (d) identify all internal or commercial names or designations.

6. "Document" or "Documents" means the original and each non-identical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether final or draft, including but not limited to all materials and things that constitute "writings," "recordings," or "photographs" within the meaning of Rule 1001 of the Federal Rules of Evidence or "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure.  The terms "Document" or "Documents" include without limitation, electronically stored information, electronic mail, or e-mail, intra, or inter-office communications (as defined herein), transcripts, judicial pleadings, petitions, motions, declarations, affidavits, electronic, magnetic, optical, or magneto-optical records, computer data, however stored, including data stored on or in diskettes or cartridges and disk drives, data cards, data processing files and other computer-readable records or programs, object code, source code, microcode, or

anything similar to any of the foregoing, however denominated by the responding party. Any Document bearing any marks, including without limitation initials, stamped indicia, comments, highlighting, marginalia, or other notations not a part of the original text or reproduction thereof, is a separate Document that is also included in each interrogatory.

     7.    "Hardware Specifications" means the architecture, design, development, and implementation documentation, including component lists, bill of materials, hardware component design and architecture documentation, circuit designs and layouts, ASIC architectures, pin-outs, data sheets, and white papers.

     8.    "Identify" shall be construed as follows:

     a.    "Identify" a communication, record, document, thing, source of information or other requested item means to list, to the extent known, the following information:

         i.    the source(s) or author(s) of the requested item;
        ii.    the recipient(s) of the requested item;
       iii.    the date of the requested item;
       iv.    where the requested item is located;
        v.    whether the requested item was made, sent, recorded or maintained in the ordinary course of business; and
       vi.    the substance of any information contained in the requested item.

     b.    "Identify" a fact means to state, to the extent known, the following information: a specific explanation, description, or narrative of the fact including all information relevant thereto; and all persons, communications, and documents relating to that fact.

     c.    "Identify" a person means to list, to the extent known, the following information:

         i.    name;
        ii.    title and position (if a natural person);
       iii.    last known business address;
       iv.    last known home address, if applicable; and
        v.    if the person identified is not a natural person, the name and address of the natural person employed by or otherwise associated with the identified person whom You believe has the most knowledge regarding the subject matter of each request.

9. "Infringe" or any variant thereof, including but not limited to "infringing" and "infringement," refers to any infringement under 35 U.S.C. § 271, whether direct, indirect, by equivalents, contributory, by inducement, literal, or by the doctrine of equivalents.

10. "Interrogatory" or "Interrogatories" means WSOU's related and/or identified Interrogatories served in the Actions.

11. "Patents-in-Suit" shall refer collectively to the '096 Patent, '171 Patent, '630 Patent.

12. "Person" is defined as any natural person or business, legal or governmental entity, or association.

13. "Product" and "products" shall be construed broadly, and shall mean any hardware product, software product, service, device, apparatus, component, or other instrumentality so as to bring within the scope of each interrogatory all responses that otherwise could be construed to be outside of its scope.

14. "Related Patents" or "Related Patent Applications" means: (a) any patents or patent applications in the chain of patents and patent applications that led to the issuance of each of the Patents-in-Suit; (b) any continuation, continuation-in-part, or division of any such applications, whether or not such continuation, continuation-in-part, or division has been abandoned or is currently pending; (c) any reexaminations, reissue applications, or applications by or through which each of the Patents-in-Suit claims priority; (d) any patents or applications that are referenced in or incorporated by reference into each of the Patents-in-Suit; or (e) any patents or applications claiming priority to (a), (b), or (c) above, including without limitation foreign counterparts.

15.  "WSOU" or "Plaintiff" means and includes WSOU Investments, LLC d/b/a Brazos Licensing and Development and its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

16.  "Netgear," "Defendant," "You," or "Your" means and includes Netgear and any other person, including any director, officer, shareholder, trustee, employee, partner, principal, manager, staff member, administrator, accountant, consultant, custodian, representative, advisor, attorney or agent, acting on behalf of, for the benefit of, or at the direction or request of Netgear, and its predecessors, successors, assigns, and affiliates.

17.  The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

18.  The terms "any," "all," and "each" shall be construed broadly, and shall mean any, all, and each as necessary so as to bring within the scope of the Interrogatory all responses that otherwise could be construed to be outside of its scope.

19.  The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.  These Requests are to be read and interpreted in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Instructions and Definitions set forth herein.

2.  You must produce all responsive documents within Your possession, custody, or control.  If any document or thing requested herein was, but no longer is, in Your possession, custody, or control, state whether it has been lost, destroyed, or transferred, is missing, or otherwise has been disposed of, and for each instance, indicate the date and circumstances of the disposal.

3.     If no documents or things are responsive to a particular Request, Netgear shall state that no responsive documents or things exist.

4.     If a Request calls for a document or thing that Netgear declines to produce, in whole or in part, based on a claim of privilege or any other claim, provide a privileged document log pursuant to Federal Rule of Civil Procedure 26(b)(5)(A) that identifies for each document separately and specifies for each document at least the following:

    a.    the date;

    b.    the authors, creators, and sender(s) identified by position and entity with which they are employed or associated and, if any author or sender is an attorney, a statement so stating and, if any sender is a foreign patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

    c.    the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating and, if any recipient is a foreign patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

    d.    the general subject matter of the document or thing; and

    e.    the portion(s) of the document as to which privilege is claimed; and the type of privilege asserted as well as a certification that all elements of the claimed privilege have been met and not waived.

5.     All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each document and thing produced in response hereto, Netgear shall identify the Request in response to which the document or thing is being produced.

6.     All documents requested are to be produced separately for each Action.

7.      These Requests seek all responsive documents in their original language and, if such original language is not English, these Requests also seek all English-language translations that may exist for any such documents.

8.      Netgear shall keep and produce a record of the source of each document or thing produced. This shall include the name and location of the file where each document or thing was located and the name of the person, group or department having possession, custody or control of each document or thing.

9.      All Requests are for discovery purposes only and are not to be construed as limiting or reflecting WSOU's positions in this case, and do not waive WSOU's rights and objections.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents identified or considered by You in Your responses to any of WSOU's concurrently-propounded Interrogatories, separately for each Action.

**REQUEST FOR PRODUCTION NO. 2:**

All documents reasonably related to the date when each Accused Product, Related Product, and product identified in Your response to Interrogatory No. 1 was developed, and the date each was sold, offered for sale, or otherwise made available to customers and/or consumers by You, separately for each Action.

**REQUEST FOR PRODUCTION NO. 3:**

All documents that provide a technical description of the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, including but not limited to software architecture design

documents, general architecture documents, reference material, high-level/low-level requirement design documents, test plans and schedules, user flows, software requirements specifications, and manuals, separately for each Action.

**REQUEST FOR PRODUCTION NO. 4:**

All documents, including Hardware Specifications and source code, sufficient to fully describe the functionality, operation, design, architecture, topology, and deployment of the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 5:**

All documents related to the technology, products, and services incorporated into the Accused Products, Related Products, and products identified in response to Interrogatory No. 1 with respect to the Accused Functionalities, separately for each Action.

**REQUEST FOR PRODUCTION NO. 6:**

All documents reasonably related to when and how You first became aware of each of the Patents-in-Suit, separately for each Action.

**REQUEST FOR PRODUCTION NO. 7:**

All documents sufficient to show by month, quarter, and/or year the actual and projected sales volume, transaction revenue, the actual and projected net and gross revenue, the actual and projected costs (itemized in sufficient detail to include direct labor costs, direct material costs, manufacturing overhead costs, other costs of goods sold, licensing costs, and other operating costs), the actual and projected number of users, the actual and projected licensing revenue, and the actual and projected gross and operating profitability for the Accused Products, Related

Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 8:**

All documents related to the costs of developing and maintaining the technology used in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 9:**

All documents related to any attribution of revenue whether directly or indirectly, whatever the revenue's direct source, to the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 10:**

All documents reflecting Your internal business and marketing plans, budgets, strategic marketing or planning reports, internal planning memoranda, internal presentations, meeting notes, feasibility studies, cost/benefit analyses, customer surveys, or minutes to board meetings for any product or application line, division, or company that includes or relates to the Accused Products, Related Products, or products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 11:**

All documents reflecting license agreements, royalty agreements, covenants-not-to-sue, settlement agreements, enterprise agreements, purchase agreements, product or software development agreements, joint ventures, or co-development agreements that You entered into (as licensor or licensee) involving any patent or technology related in any way or covering any

aspect of the Accused Products, Related Products, and products identified in response to Interrogatory No. 1, or for any similar or related technology, separately for each Action.

**REQUEST FOR PRODUCTION NO. 12:**

All documents related to rates and amounts paid under any of the agreements identified in response to these requests for production, including, but not limited to Request for Production No. 12 above.

**REQUEST FOR PRODUCTION NO. 13:**

All documents relating to Your licensing policy or policies, including but not limited to copies of the policies themselves.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and communications reasonably related to the reasons for Your decision to sell, license, offer, or provide the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 15:**

All documents related to marketing, promoting, and/or advertising the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 16:**

All documents reflecting any awards, recognition, or articles relating to the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 17:**

All documents relating to any customer requests for products, hardware, software, and/or applications that include the Accused Functionalities.

**REQUEST FOR PRODUCTION NO. 18:**

All documents reflecting any industry or customer need for the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 19:**

All documents reflecting that the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1 meet industry or customer needs.

**REQUEST FOR PRODUCTION NO. 20:**

All documents that purport to value or provide any cost-benefit analysis of particular features of the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 21:**

All documents sufficient to fully describe all testing (and results of that testing) You conducted or commissioned others to conduct related to the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 22:**

Documents reflecting organizational charts or similar documents relating to the organization or location of any facility or group involved in the research, development, or

production of the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to determine the name, location, title and role of all employees, persons, or entities involved in the research, development, design, or production of the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to determine the name, location, title and role of all employees involved in the marketing, sale, or distribution of the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to show the structure of the sales and marketing departments, distributor relationships, distribution system, total market coverage, sales force territory, sales force number, or compensation and commission structure related to the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 26:**

Documents relating to any product, hardware, software, application, or service that competes with any of the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 27:**

Documents relating to advertisements, including marketing documents, sales documents, and internet web pages, created by or on Your behalf relating to the Accused Functionalities as

implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 28:**

Documents related to Your corporate policy or procedures, whether formal or informal, on licensing Your technology, including patents, or on use, non-use, or licensing of technology claimed in patents owned by or assigned to entities other than You.

**REQUEST FOR PRODUCTION NO. 29:**

Documents relating to any opinion letters, memoranda, study, investigation, search, analysis, or opinion about the validity, enforceability, scope, or infringement of each of the Patents-In-Suit, separately for each Action.

**REQUEST FOR PRODUCTION NO. 30:**

Documents related to any analysis of the value of any patents or patent rights owned by WSOU, including but not limited to the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 31:**

All documents identified or considered by You in Your responses to any discovery, separately for each Action.

**REQUEST FOR PRODUCTION NO. 32:**

All financial reports from 2014 to the present, including but not limited to: annual reports; SEC Filings, including 20-F, 10-K, 8-K, etc.; unaudited financial statements; operating segment financial statements; division level financial reports; product line financial reports that include any division that sells, licenses, offers, or provides any of the Accused Products, Related Products, and products identified in response to Interrogatory No. 1; profit and loss statements; and tax returns.

**REQUEST FOR PRODUCTION NO. 33:**

All product catalogs or brochures, including the Accused Products, Related Products, and products identified in response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 34:**

All product code descriptions (for codes used in financial or other internal reports) involving the Accused Products, Related Products, and products identified in response to Interrogatory No. 1, separately for each Action.

**REQUEST FOR PRODUCTION NO. 35:**

Documents relating to Your document retention or destruction policies or practices.

**REQUEST FOR PRODUCTION NO. 36:**

All documents You may offer as evidence, use as an exhibit, or otherwise rely on in any trial, hearing, motion, submission to the court, submission to a special master, or deposition separately for each Action.

Dated: November 29, 2021

OF COUNSEL:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
ThucMinh Nguyen
John W. Downing
Heather S. Kim
Jack Shaw
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453-5170

Shelley Ivan
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, GA 30309
(404) 260-6080

Respectfully submitted,

DEVLIN LAW FIRM LLC

By: */s/ James Michael Lennon*

James Michael Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for WSOU Investments, LLC d/b/a Brazos Licensing and Development*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2021, I have served a copy the above document via email on the counsel for Defendant.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop