**EXHIBIT J**

1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711                    J E N N E R & B L O C K LLP

May 6, 2022                                            Amr O. Aly
                                                       Tel +1 212 407 1774
                                                       AAly@jenner.com

VIA EMAIL

John Downing, Esq.
Jonathan Waldrop, Esq.
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065

Re:    *WSOU v. NETGEAR*, Case No. 1:21-cv-01119-MN, D. Delaware

Dear John and Jonathan:

We are in receipt of your May 3, 2022 email regarding the April 21, 2022 meet and confer,
which also attached WSOU's letter responding to NETGEAR's September 21, 2021 Rule 11
notification letter ("Rule 11 letter"). This letter responds to both your May 3 email and letter of
the same date.

## I.     May 3, 2022 Email from John Downing

### A.     April 21, 2022 Meet and Confer

On April 21, 2022, the parties conducted a meet and confer regarding NETGEAR's core
technical production and WSOU's second notice of deposition of NETGEAR. At the end of this
meeting, I specifically asked John if there was anything he needed from NETGEAR at that time
and he said no. Instead, John was going to look at the documents identified during the call and
send a correspondence identifying WSOU's needs. NETGEAR is still waiting for this
correspondence and John's email indicates that WSOU is "compiling a list of follow up
questions and will be in touch shortly regarding the same."

John's email also purports to provide a summary of the meet and confer, and asks NETGEAR to
confirm its accuracy. NETGEAR does not agree that the May 3, 2022 email is an accurate
reflection of the parties' April 21, 2022 meet and confer, and further states that the May 3, 2022
email summary appears to omit signification portions of the parties' discussions. As such,
NETGEAR has provided its own summary of the April 21, 2022 meet and confer below.

Page 2

### B.    NETGEAR's Summary of the April 21, 2022 Meet and Confer

Introduction
On April 21, 2022, WSOU and NETGEAR had a telephonic meet and confer. Attending for WSOU was lead counsel John Downing and Delaware counsel Peter Mazur. Attending for NETGEAR was lead counsel Amr Aly and Lisa Schoedel, and Delaware counsel Jennifer Ying.

John started the call by stating that he wanted to talk about the Rule 30(b)(6) notice dated April 7, 2022, but Amr suggested before talking about the notice that the parties should get on the same page as there seems to be a disconnect. Amr said that we are trying to help WSOU figure out what they actually need.

March 15, 2022 Correspondence
To get on the same page, Lisa started by asking John if he understood her March 15, 2022 email that included an explanation regarding how documents were collected from NETGEAR's technical support webpage. John said he did.

April 5-6, 2022 Correspondence
Lisa then started asking questions about the April 5-6, 2022 email exchange between Lisa and Noah Dorman. Noah's first point was about encryption and John did not know whether there was a production problem or that WSOU was still trying to read machine code. Lisa explained that firmware could be downloaded from the webpage onto the device associated with that webpage.

John was also not familiar with Noah's second point regarding the 150 allegedly missing files. Lisa explained that every file originally produced with the slip sheet that said "UNABLE TO CONVERT" should now have a native file associated with it. If WSOU believes there are still missing files, Lisa told John that WSOU should let NETGEAR know which one(s) are missing, and NETGEAR will provide the file again. As John was not prepared to discuss the April 5-6, 2022 email exchange, Lisa suggested that they go patent-by-patent and discuss what core technical documents were produced. She also suggested that Noah give her a call if he was having problems with any of the documents.

'171 Patent
For the '171 patent, Lisa indicated that she had already provided the BATES range for the '171 patent and Jen had already identified the Facebook WiFi Implementation Guide (the "Guide") in previous emails. Lisa provided the BATES number for the Guide, NET0015575. Lisa explained that the Guide is the document that Facebook provides to API developers and this is the document that NETGEAR used to make API calls to Facebook's servers. Facebook's servers

Page 3

then perform all of the functionalities of Facebook WiFi. Included in the Guide are snippets of code that inform the API developers on how to make the API calls. John expressed a concern that if the Guide provides that there are multiple ways to make the same API call, that it may not be clear from the Guide which specific method NETGEAR is using. John then asked if there was a way that NETGEAR could confirm the specific lines of code that NETGEAR uses on its servers. Jen said we would investigate to see if there was a way to confirm which of the API calls in the Guide NETGEAR uses.

'630 Patent
For the '630 patent, Lisa used the M7100 as an exemplary accused product. Lisa provided the following BATES numbers:

- NET0007788 – CLI Command Reference Manual
- NET0009053 – Software Administration Manual
- NET0010414 – User Manual
- NET0015354 – Data Sheet
- NET0021633 – Command Line Interface User Manual
- NET0045536 – Broadcom Comprehensive Product Spec
- NET0046125 – Broadcom Product Functional Specification
- NET0054422 – RFC2474 DiffServ

Lisa explained that a user of the M7100 can select Quality of Service (QoS) settings using these manuals. Lisa also explained that the data sheet identifies the IEEE and RFC standards that the M7100 complies with and used RFC2474 as an example. Lisa explained that the user selects whether or not to use DiffServ and how. Jen further confirmed that the user is the one who turns on and off features and that there is no way for NETGEAR to know if users use certain features. John asked us to look at what was on NETGEAR's servers to see what code is available for a particular feature. Jen said we would see if NETGEAR had any additional information, but the chip manufacturer would be the one that would know how the features are implemented. Lisa asked if John had reviewed the two Broadcom documents (NET0045536 and NET0046125); John stated that he had not.

Chipsets
John asked if we had a list of chip part numbers and/or chip manufacturers. Lisa said that NET0053671 identifies the chip part numbers for the Orbi products (~87 products), and other documents such as PRDs and P1-Exit documents also have chip part numbers. The chip part numbers should also give WSOU information about who is the relevant chip manufacturer.

Page 4

'096 Patent

For the '096 patent, Lisa used the CAX80 as an exemplary accused product.  Lisa provided the following BATES numbers:

- NET0000001 – IEEE 802.11ac
- NET0000432 – Data Sheet
- NET0000444 – User Manual
- NET0017642 – PRD
- NET0017643 – P1-Exit
- NET0053671 – "Features" spreadsheet

Lisa explained that the data sheet describes 802.11, MU-MIMO, and the frequency; the user manual discusses changing WiFi modes; and the PRD, P1-Exit, and "Features" spreadsheet provide the chipset numbers, explicit beamforming, MU-MIMO, and 802.11.

Next Steps

Amr asked John if there was anything he needed from NETGEAR now.  John said no.  He was going to look at the documents and send a follow up correspondence of what WSOU needs. John said he would be back in touch.

## II.    May 3, 2022 Letter from Jonathan Waldrop

Based on the April 21, 2022 meet and confer, and John's acknowledgement in his May 3, 2022 email that WSOU has not provided its list of questions to WSOU, NETGEAR is both surprised and disappointed with WSOU's May 3, 2022 letter demanding "complet[ion of] the production" and information on May 6, 2022 or May 13, 2022.[1]  Not only is such a demand inconsistent with counsel's own acknowledgement that WSOU has yet to provide NETGEAR with any list of follow up questions, such a demand is also inconsistent with the deadlines as set forth in the Scheduling Order, which provides that the substantial completion of document production deadline is not until November 3, 2022.  *See* C.A. No. 21-1119, D.I. 20, ¶ 8(b).

### A. Alleged Technical Document Deficiencies

NETGEAR disagrees that there are any technical document deficiencies with its document production.  As described above, WSOU's counsel confirmed during the April 21, 2022 meet

---

[1] The May 3, 2022 letter "requests that Netgear complete the production and response by May 13" and "provide information no later than Friday, May 6, 2022."  The letter is unclear whether WSOU intended to provide two different dates and whether the information requested is the same or different.

Page 5

and confer that it would be in touch with NETGEAR should WSOU have further questions about NETGEAR's document production. That discussion included documents relating to the '171 patent. Thus, as NETGEAR has previously stated, should NETGEAR receive a further list of questions from WSOU, NETGEAR will respond to those questions in a timely manner.

Mr. Waldrop's May 3, 2022 letter now raises for the first time an issue with respect to NETGEAR's response to WSOU's RFP No. 4 and Interrogatory No. 3. As set forth in the summary of the April 21, 2022 meet and confer above, the April 21, 2022 meet and confer focused on NETGEAR's core technical production and WSOU's second notice of deposition. If WSOU wants to schedule a meet and confer to discuss NETGEAR's responses to those two discovery requests (RFP No. 4 and Interrogatory No. 3), please provide a proposed time.

We also disagree with WSOU's assertion that the time for "producing source code has long passed." (May 3, 2022 Letter, p. 2.) The deadline for substantial completion of document production is not until November 3, 2022. C.A. No. 21-1117, D.I. 17 at ¶ 8(b). Although NETGEAR does not believe that production of NETGEAR source code is necessary for these cases as the functionalities at issue are provided by the chipset manufacturers and/or third parties, and thus it is the chipset manufacturers or other third parties such as Facebook that would have the relevant technical documents and/or source code, NETGEAR is willing to meet and confer with WSOU to discuss further.

### B.  Response to September 16, 2021 Letter

NETGEAR's September 16, 2021 Rule 11 letter requested that WSOU dismiss Case No. 1:21-cv-01119-MN to avoid Rule 11 sanctions. On September 20, 2021, John responded stating that WSOU "will respond promptly." I sent a reminder on September 22, 2021. During a meet and confer on November 18, 2021, John again said that WSOU would respond to my letter in writing. I sent a reminder on November 20, 2021. WSOU never responded to either of my reminders.

Despite those reminders, WSOU did not respond to NETGEAR's Rule 11 letter until nearly 8 months later, and fails to provide a reason for that delay. Because of WSOU's delay, NETGEAR has incurred and continues to incur attorney fees for this case.

### 1.    Non-Infringement

WSOU argues that its Amended Complaint (D.I. 24) resolves the lack of support in its original complaint. WSOU is mistaken. Indeed, WSOU's letter cites to paragraphs of its amended complaint and Exhibit 2, which were not changed by this amendment. WSOU also states that it "has served additional infringement contentions," but fails to mention that these contentions are the same as Exhibit 2 to both the original and amended complaints. WSOU also fails to mention

Page 6

that NETGEAR produced the document Facebook provides to API developers that want to make API calls to Facebook's servers prior to WSOU serving its infringement contentions. Notably, WSOU's infringement contentions, served February 17, 2022, fail to cite to a single document that NETGEAR produced in its core technical document productions.

The reason for WSOU's failures is clear. Facebook (now Meta Platforms, Inc.) performs the functionality identified in WSOU's charts. Since at least September 2021, WSOU has known that NETGEAR devices supporting Facebook WiFi only make API calls to Facebook's server. Since at least January 13, 2022, WSOU had the document Facebook provides showing how to make those API calls. Despite having this information, WSOU did not use this document in its infringement contentions.

No further discovery is necessary as these facts will remain unchanged. To the extent WSOU wants to explore these issues through discovery, it should have subpoenaed Meta for the Facebook WiFi software. To date, WSOU has not done so. Instead, WSOU has avoided this discovery because it knows what it will find as evidenced in Exhibit 2 of its complaints and its infringement contentions. That is not a basis for WSOU to maintain this action against NETGEAR and NETGEAR again demands that WSOU dismiss the 21-1119 action.

### 2. Invalidity

#### a. 35 U.S.C. § 101

Because WSOU failed to dismiss its suit, the parties have now fully briefed a Motion to Dismiss based on 35 U.S.C. § 101 at great expense to NETGEAR. It is further likely that oral argument will be held on the motion, which will further increase attorney time and expenses. NETGEAR reserves all rights to seek full costs and fees associated with having to resolve this motion based on WSOU's failure to dismiss the action.

#### b. 35 U.S.C. §§ 102 and 103

NETGEAR's Rule 11 Letter provided a chart that demonstrates U.S. Patent Publication No. 2012/0110643 ("the '643 Publication") anticipates claim 1 of the '171 patent. Eight months later and after WSOU answered an interrogatory asking WSOU to identify the earliest priority date, WSOU infers that it may be able to antedate this art. (May 3, 2022 Letter, p. 3.) On January 19, 2022, however, WSOU answered that the earliest priority date for the '171 patent was the patent's earliest filing date. To the extent that WSOU believes it has any evidence of an earlier priority date other than what is listed on the face of the '171 patent, WSOU must provide that

Page 7

information immediately.  WSOU cannot withhold material information relating to NETGEAR's interrogatory.

WSOU also argues that the '643 Publication "does not disclose at least 'processing of social networking information … to determine one or more social networking groups.'" (May 3, 2022 Letter, p. 3.)  In making this statement, WSOU makes no effort to explain why the '643 Publication excerpts in the chart fail to disclose this limitation.

WSOU also states that the Rule 11 letter does not address other claims or obviousness.  Those arguments are disingenuous.  On March 31, 2022, NETGEAR served its initial invalidity contentions.  In addition to providing a chart showing how the '643 Publication anticipates claims 1, 8-10, and 17, and renders obvious claims 7 and 17 of the '171 patent, NETGEAR provided invalidity charts for US Patent Publication No. 2013/0080520 and US Patent No. 8,515,434.  WSOU's belated letter fails to acknowledge the changed circumstances in this case and address those additional invalidity contentions.

### c.  35 U.S.C. § 112

The Rule 11 letter placed WSOU on notice that at least claim 1 of the '171 patent is invalid under 35 USC § 112.  Claim 1 includes both apparatus limitations (one or more resources) and method limitations (processing and controlling).  WSOU responds by stating that claim 1 is a method claim and the "processing and controlling" limitations are not method steps.  This argument proves that claim 1 is indefinite.  If claim 1 is a method claim and those limitations are not method steps, then claim 1 has no method steps at all.  WSOU's argument that the preamble language "facilitating a processing of and/or processing" are the method steps defies the constructs of patent law.

### 3.  Unenforceability

The Rule 11 letter also explained how the inventors and the prosecuting attorney committed inequitable conduct during prosecution of the '171 patent application.  NETGEAR recognizes that this claim will require fact discovery, but has not yet served deposition notices to limit the amount of attorney fees expended in this case.  NETGEAR has until the close of fact discovery, currently set for February 10, 2023, to take these depositions.

*     *     *

Page 8

NETGEAR intends to seek attorneys' fees when this case is finally dismissed.  Please contact the undersigned if WSOU would like to discuss this case further.

Sincerely,

Amr O. Aly