IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>                Plaintiff,<br><br>v.<br><br>NETGEAR, INC.,<br><br>                Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 21-1117 (MN) (CJB)<br>C.A. No. 21-1119 (MN) (CJB)<br>C.A. No. 21-1120 (MN) (CJB)<br><br>**REDACTED – PUBLIC VERSION** |

**DEFENDANT NETGEAR, INC.'S LETTER IN RESPONSE TO COURT'S REQUEST FOR MORE INFORMATION REGARDING ITS BURDEN FOR PROVIDING WITNESSES FOR WSOU'S SECOND RULE 30(B)(6) NOTICE OF DEPOSITION**

OF COUNSEL:

Amr O. Aly
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 891-1600

Lisa M. Schoedel
Yusuf Esat
Mitchell L. Denti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
(312) 222-9350

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

**Original Filing Date: June 24, 2022**
**Redacted Filing Date: July 1, 2022**

Dear Judge Burke,

Defendant NETGEAR, Inc. ("NETGEAR") respectfully submits this letter in response to the Court's June 23, 2022 Oral Order (D.I. 68)[1] asking how difficult it would be for NETGEAR to designate and prepare Rule 30(b)(6) witnesses for Topics 41-44.  D.I. 63-14 at 50-51.  The answer is:  It would be very difficult for NETGEAR to designate and prepare witnesses on Topics 41-44, as written.  Topics 41-44 fail to describe "with reasonable particularity" the matters on which examination is requested and are overbroad and unduly burdensome.  F.R.C.P. 30(b)(6).  Moreover, in view of the extensive core technical document production and supplemental interrogatory responses already provided to WSOU, requiring NETGEAR to provide testimony on these topics would be disproportionately burdensome under Rule 26(b).

For example, Topic 41 simply states "Core Technical Documents Produced by Netgear."  *Id*. at 50.  NETGEAR objected to this topic because it "seeks testimony on numerous documents" and "[i]t is unreasonable to request testimony regarding such a large and disparate set of information."  Ex. 5 at 35 (excerpt of NETGEAR's objections).  There is no description of which documents, if any, are to be the subject of deposition or what it is about the documents that WSOU seeks testimony about.[2]  In addition, NETGEAR has now produced over 3000 technical documents totaling approximately 70,000 pages.  Thus, it would be impossible for NETGEAR to designate and prepare witnesses for this overly broad topic.

Topic 42 is similarly problematic.  Topic 42 seeks testimony regarding "core technical documents that disclose the following functionalities" and proceeds to list the "design and implementation" of a number of broad functionalities relating to the IEEE 802.11ac wireless protocol, Facebook WiFi, and congestion control without regard to any specific NETGEAR product.  Ex. 5 at 35-36.  As noted in NETGEAR's June 13, 2022 letter, WSOU has accused 164 products of infringement.  D.I. 65 at 1.  Moreover, as NETGEAR has previously advised WSOU, these functionalities are not designed or implemented by NETGEAR, but rather, by third parties.  *See, e.g.,* Ex. 5 at 36.  But even assuming NETGEAR has this information, it is not clear how NETGEAR can reasonably prepare a witness (or even multiple witnesses) to testify as to the "design and implementation" of these overly-broad functionalities across 164 products, especially given that WSOU has not limited this Topic to the actual accused functionality at issue in these cases.  For example, Topic 42(g) broadly recites "design and implementation of policies and actions" – it is not clear to NETGEAR what "policies and actions" are at question.

Topics 43 and 44, which seek testimony about third parties that "possess information regarding core technical documents" and persons at NETGEAR "knowledgeable" about Topics 42 and 43,

---

[1] Unless otherwise noted, all docket citations are to C.A. No. 21-1119.

[2] To the extent WSOU seeks testimony regarding NETGEAR's efforts to locate, collect, organize, and produce core technical documents, such a deposition topic is improper.  WSOU has not made a threshold showing "that significant, relevant, and non-cumulative information has been withheld or overlooked."  *British Telecomms. PLC v. IAC/Interactivecorp*, No. 18-366-WCB, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) (finding that plaintiff's complaints about defendant's document production did not warrant compelling defendants to product a witness on deposition topics related to document production).

respectively, are so broad that that they would encompass any third party or NETGEAR employee that possesses any information regarding the IEEE 802.11ac wireless protocol, Facebook WiFi, or congestion control.  Once again, it is unclear how NETGEAR could prepare a witness (or even multiple witnesses) to identify everyone in the world that has knowledge regarding WiFi, for example.  And, NETGEAR has already provided to WSOU the identities of relevant third parties.

Notwithstanding the foregoing, assuming the parties could reach agreement on a reasonable scope for Topics 41-44, NETGEAR estimates that it would need to designate and prepare approximately ten employees for these four topics alone. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The products accused of infringing the '096 and '171 patents are in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, while the products accused of infringing the '630 patent are in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

WSOU identified 114 products that infringe the '096 patent, covering many different product lines including access points[3], mesh systems, wireless bridges, hotspots, routers, cable modems, and range extenders.  As a result of this breadth, NETGEAR estimates that it will need three types of people for each product type: a project manager, a person in R&D, and a software person.  Depending on the narrowing of the topics, NETGEAR would attempt to limit the number of witnesses by educating them about other product categories than those they normally handle.  For example, instead of seven project managers for seven product categories, NETGEAR would attempt to provide three project managers.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Depending on the narrowing of topics, NETGEAR would attempt to educate the US-based project manager to cover the other project manager's area of knowledge.  That would leave three employees, a project manager, a person in R&D, and a software person, to testify regarding the core technical documents for products accused of infringing the '630 patent.

In its June 13 letter, NETGEAR explained that the parties previously discussed dropping the deposition for Topics 41-44 in view of providing chipset information to WSOU.  D.I. 65 at 2; *see also* D.I. 63-10.  As a result, the parties never met and conferred about the scope of these topics or NETGEAR's objections to these topics.  Since then, at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ manually collected the chipset information, and NETGEAR supplemented its interrogatory response to identify the third parties that are knowledgeable regarding the functionalities listed in Topic 42.  NETGEAR also produced the source code in its possession that interfaces with the Facebook API, at WSOU's request.  As such, NETGEAR does not believe that any witness on these topics is necessary.  As described in its June 13 letter, third parties, not NETGEAR, possess the "core technical documents" that WSOU currently seeks.

In sum, NETGEAR believes that a deposition on Topics 41-44 is no longer necessary as WSOU has the information it needs regarding the identity of third parties with possession of technical documents, and can pursue discovery from those third parties.  At a minimum, however, should the Court believe that depositions are warranted under Rule 26(b), WSOU should be required to further meet and confer with NETGEAR regarding the scope and relevance of each topic.

---

[3] WSOU also accused certain access points of infringing the '171 patent.

        Respectfully,

        */s/ Jennifer Ying*

        Jennifer Ying (#5550)

JY/lo  
Attachment  
cc:    Clerk of the Court (via hand delivery)  
        All Counsel of Record (via CM/ECF and e-mail)

3