# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>             Plaintiff,<br>    v.<br><br>NETGEAR, INC.,<br><br>             Defendant. | C.A. No. 1:21-1117-MN-CJB<br>C.A. No. 1:21-1119-MN-CJB<br>C.A. No. 1:21-1120-MN-CJB |

**NETGEAR'S RESPONSES AND OBJECTIONS TO
WSOU'S 30(b)(6) SECOND NOTICE OF DEPOSITION**

Pursuant to Rules 26(b) and 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Netgear, Inc. ("NETGEAR" or "Defendant") provides its responses and objections to the April 7, 2022 Second Notice of Deposition ("WSOU's Notice") of Plaintiff WSOU Investments, LLC ("Plaintiff" or "WSOU").[1] NETGEAR's responses and objections are given without prejudice to NETGEAR's right to revise and/or supplement them.

**GENERAL OBJECTIONS**

NETGEAR incorporates the following General Objections into its response to each of WSOU's deposition topics, whether or not one or more General Objections are expressly referred to in a specific response.

1.  NETGEAR objects to this Second Notice of Deposition because it was served on April 7, 2022, three days after the date recorded in its signature block and Certificate of Service, which both state April 4, 2022.

---

[1] Although WSOU's Notice is dated April 4, 2022, including in the Certificate of Service, it was not served until April 7, 2022,

1

2. NETGEAR objects to each Topic for examination, including the definitions and instructions contained therein, to the extent it purports to impose obligations on Defendant beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, any other applicable law, or any agreements or stipulations between the parties.

3. NETGEAR objects to the "Definitions" and "Instructions" to the extent they are inconsistent with or seek to impose requirements and/or obligations that exceed or differ from those permitted by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, any Orders of this Court, or any agreements or stipulations between the parties.

4. NETGEAR objects to the noticed date and time on the basis that it was unilaterally set. NETGEAR further objects to the noticed date and time as premature in light of the scope of discovery sought by the Notice (covering 44 Topics and more than 200 products), WSOU's repeated expansion of the list of accused NETGEAR products, and WSOU's failure to refine its infringement allegations at this stage of discovery.[2]

5. NETGEAR objects to the noticed location as unduly burdensome. At the appropriate time, NETGEAR will make its deponent(s) available, subject to and without waiver of its objections, at a location that is convenient for the designated corporate representative(s).

6. NETGEAR objects to the requested Topics as overly broad, unduly burdensome and disproportionate to the needs of the case. WSOU's Notice contains 44 Topics, with most Topics each implicating over 200 products.

---

[2] On January 13, 2022, NETGEAR produced 2869 documents having a total of 54,114 pages. Of those, 1277 files were single page slip sheets that were replaced with single document native files. WSOU had 1592 documents and 52,837 pages of technical evidence to use in its Initial Infringement Contentions. Instead, WSOU's Initial Infringement Contentions used the same evidence as the claim charts attached to its complaints, did not use *any* of the evidence produced on January 13, 2022, and do not meaningfully refine WSOU's infringement theories from those stated in its complaints.

2

7. NETGEAR objects to WSOU's Definitions and each Topic to the extent that WSOU seeks discovery that is overly broad, unduly burdensome, not relevant to any claim or defense in this action, and/or not reasonably calculated to lead to the discovery of admissible evidence. NETGEAR further objects to WSOU's Definitions and each Topic to the extent they purport to include products of NETGEAR that WSOU has not alleged to infringe the asserted claims of the asserted patents, or for which WSOU has not provided detailed infringement contentions.[3]

8. NETGEAR objects to WSOU's Notice to the extent it seeks discovery that is not proportional to the needs of the case, in violation of Fed. R. Civ. P. 26(b)(1).

9. NETGEAR objects to each Topic to the extent it is duplicative of other discovery taken in this case or seeks discovery that is more readily available through other, less-burdensome means.

10. NETGEAR objects to each Topic to the extent it seeks information that is available in the public domain and, therefore, is equally accessible to WSOU and subjects NETGEAR to unreasonable burden and undue expense.

11. NETGEAR objects to WSOU's Notice to the extent it calls for information not maintained by NETGEAR in the ordinary course of business, or purports to require NETGEAR to generate information that does not currently exist.

12. NETGEAR objects to WSOU's Notice to the extent it is unlimited in temporal and/or geographic scope (including requests for information about activities outside the United States).

---

[3] *See supra*, n.2.

13. NETGEAR objects to WSOU's Notice to the extent it fails to comply with the "reasonable particularity" or "reasonably available to the organization" requirements set forth in Rule 30(b)(6).

14. NETGEAR objects to producing witness(es) for deposition(s) that continue beyond the allowable time under the Federal Rules of Civil Procedure. "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). In addition, NETGEAR objects to any request for deposition that would exceed the total hour limit prescribed in the Scheduling Orders (*e.g.*, C.A. No. 21-1120, D.I. 16 at ¶ 8(e)(i)).

15. NETGEAR objects to each Topic, including the definitions and instructions contained therein, to the extent it seeks information that is not relevant to these actions and that is not proportional to the needs of these cases, or for which for which the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of these cases, the parties' resources, the amount in controversy, the importance of the issues at stake in these litigations, and the importance of the proposed discovery in resolving these cases.

16. NETGEAR objects to each Topic, including the definitions and instructions contained therein, to the extent it seeks information in the possession, custody, or control of third parties except to the extent otherwise agreed to in writing by the parties. NETGEAR further objects to any deposition Topic requesting a third-party's proprietary or confidential information, *e.g.*, information supplied by a third-party to NETGEAR under a non-disclosure or confidentiality agreement, unless the third-party agrees to a suitable protective order or consents to disclosure to WSOU.

17. NETGEAR objects to WSOU's Notice to the extent it calls for testimony protected from disclosure by the attorney-client privilege, the work-product immunity, or any other

applicable privilege or immunity. The inadvertent disclosure by NETGEAR of any information protected from disclosure by the attorney-client privilege, the work-product immunity, or any other applicable privilege or immunity will not constitute a waiver by NETGEAR of any such protection. NETGEAR will provide one or more witnesses to testify as to unobjectionable Topics set forth in WSOU's Rule 30(b)(6) deposition notice on the condition that any inadvertent disclosure of protected information will not constitute a waiver, and requests that WSOU inform NETGEAR of any objection to this condition before deposing any NETGEAR Rule 30(b)(6) witness.

18. NETGEAR objects to any deposition Topic as premature and improper to the extent that the Topic seeks information subject to expert opinion. NETGEAR will provide expert discovery in accordance with the Scheduling Orders and the Federal Rules of Civil Procedure.

19. NETGEAR objects to each Topic to the extent that it calls for a witness to testify as to a legal conclusion. NETGEAR further objects to each deposition Topic to the extent it seeks legal positions and/or contentions. Contention topics are not permitted in this District.

20. NETGEAR objects to WSOU's use of undefined terms that are subject to multiple interpretations, thus rendering a Topic vague and ambiguous. NETGEAR's response and objections are based on its interpretations of undefined terms, which may differ from WSOU's interpretation. NETGEAR reserves the right to supplement, amend, or modify its Responses and Objections in the event a dispute arises over the meaning of an undefined term.

21. NETGEAR objects to each Topic, including the definitions and instructions contained therein, to the extent it seeks to shift the burden on issues for which WSOU bears the burden of proof (e.g., infringement or damages) to NETGEAR.

22. NETGEAR objects to the extent WSOU's Instructions or Definitions purport to impose discovery obligations that are inconsistent with, not found in, or exceed the requirements of (a) the Federal Rules of Civil Procedure, (b) the Local Rules, or (c) any court order or directive.

23. NETGEAR objects to WSOU's definition of "Accused Products" (Notice ¶ 2) as overly broad and unduly burdensome. WSOU's definition explicitly includes more than 200 products. WSOU has not made a *prima facie* showing that these products are relevant to the patents-in-suit. WSOU is not entitled to discovery on NETGEAR products that are not properly part of this case. In addition, WSOU's definition vaguely refers to "products and services that operate substantially similar to the products and services specifically identified in the Actions." This definition fails to provide reasonable notice as to the discovery sought. It amounts to a fishing expedition into products that WSOU has not even facially alleged of infringement. Moreover, WSOU's definition is open-ended, purporting to be "not limited to" even the unreasonably large set of products discussed above. NETGEAR cannot reasonably provide a prepared witness with respect to products that have not even been identified. NETGEAR reserves its right to seek a Protective Order pursuant to Fed. R. Civ. P. 26(c) if WSOU fails to reasonably narrow its requested discovery. Thus, where NETGEAR states herein that it will provide a witness with respect to the Accused Products, NETGEAR's provision of a witness is contingent on WSOU reasonably narrowing the scope of Accused Products and providing detailed infringement contentions for those Accused Products.

24. NETGEAR objects to WSOU's definition of "Accused Functionalities" (Notice ¶ 3) as vague. WSOU defines this term as "the technologies described in the claims of the Patents-in-Suit, the claim charts attached to the complaint in each of the Actions, and as described in Plaintiff's Infringement contentions." This is a conclusory definition that provides no description

6

of the contours of WSOU's contemplated "Accused Functionalities." NETGEAR will apply its understanding of the functionalities at issue in these cases. If WSOU intends to seek deposition testimony on particular functionalities, it is incumbent on WSOU to specifically identify those functionalities. WSOU cannot later seek additional testimony concerning functionalities that it failed to properly identify in its Notice.

25. NETGEAR objects to WSOU's definition of "Patented Technology" (Notice ¶ 14) as vague and conclusory. WSOU defines "Patented Technology" as "all technologies described in the claims of the Patents-in-Suit." This definition, like WSOU's definition of "Accused Functionalities," provides no notice as to the scope of discovery sought by WSOU. NETGEAR will apply its understanding of the claimed subject matter. If WSOU intends to seek deposition testimony on particular subject matter, it is incumbent on WSOU to specifically identify that subject matter. WSOU cannot later seek additional testimony concerning subject matter that it failed to properly identify in its Notice. Moreover, WSOU's definition improperly calls for legal conclusions, including claim construction.

26. NETGEAR objects to WSOU's definition of "NETGEAR" (and related terms) (Notice ¶ 8) to the extent it encompasses entities other than Netgear, Inc. (e.g., distributors). Netgear, Inc. responds to WSOU's Notice solely on its own behalf, and not on behalf of any other corporate entity, parent company, affiliate company, or other entity. Any testimony provided in response to WSOU's Notice is limited to matters within the knowledge of Netgear, Inc.

27. NETGEAR objects to requests for testimony on "Related Products," which WSOU defines (Notice ¶ 19) as "includ[ing] any [NETGEAR] products, services, software, and/or applications that are related to the Accused Products." The identity of any products purportedly constituting "Related Products" is unknown, and WSOU fails to show the relevance of any such

7

products. NETGEAR further objects to the Topics to the extent it seeks information regarding products, functionality, or services that have not specifically been accused of infringement and for which WSOU has not provided detailed infringement contentions. NETGEAR cannot provide a witness on unknown products with no known bearing on these cases.

28. NETGEAR objects to providing discovery in Case No. 21-1119, which asserts U.S. Pat. No. 9,338,171 ("the '171 patent"). On September 16, 2021, NETGEAR sent to WSOU a letter explaining that WSOU must drop this suit because it does not have a Rule 11 basis for asserting the '171 patent against NETGEAR. Among other grounds, NETGEAR explained that there is no plausible basis for asserting infringement because a third party (Facebook), not NETGEAR, performs the steps alleged by WSOU. On September 22, 2021, WSOU promised that it "will respond promptly" to NETGEAR's positions. During a meet and confer on November 18, 2021, WSOU's counsel said that WSOU would respond in writing. Despite NETGEAR's counsel providing a reminder email on November 30, 2021, WSOU still has not responded to NETGEAR's Rule 11 letter. But now, more than six months later, and despite multiple follow-up requests by NETGEAR for a response, WSOU has provided no response. NETGEAR's motion to dismiss under Section 101 is also pending. Thus, NETGEAR's responses herein concern only Case Nos. 21-1117 and 21-1120. ***NETGEAR does not agree to provide a witness on any matter concerning the '171 patent.***

29. NETGEAR bases its Responses and Objections on the information currently available to it. NETGEAR's search for a person or persons who are able to testify on its behalf with respect to WSOU's deposition Topics is ongoing. NETGEAR expressly reserves the right to amend, supplement, or correct its responses if it discovers other or additional persons, information, documents, or things.

30. NETGEAR's designation of one or more witnesses is made without waiving or intending to waive any objections as to relevancy, materiality, privilege, and/or admissibility of any information in this or any subsequent proceeding, e.g., without waiving any objections at trial.

31. These General Objections and the Specific Objections below are made as to matters that are clearly objectionable on the face of the Topics. NETGEAR makes these objections without prejudice to and without waiver of its right to object on any other grounds to any of the Topics.

**OBJECTIONS AND RESPONSES TO SPECIFIC TOPICS FOR TESTIMONY**

**1. The identity, design, development, history, testing, implementation, functionality, marketing, sale, offering for sale, and operation of the Patented Technology, Accused Products, and Related Products.**

**SPECIFIC OBJECTIONS:** In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR further objects to WSOU's request for information about the "identity," "history" and "testing" of Accused Products as vague, overly broad, and failing to specify with reasonable particularity the nature of the information sought by this Topic. NETGEAR does not understand what this request covers beyond the other portions of this Topic. NETGEAR further objects to this Topic as overly broad to the extent it seeks information regarding aspects of Accused Products that are not relevant to this suit. NETGEAR further objects to this Topic as seeking (i) information that is within the possession of WSOU or third parties and/or (ii) expert opinion, to the extent it seeks information about the Patented Technology. NETGEAR further objects to the phrase "Patented Technology," as set forth in the General Objections (¶ 25). NETGEAR further objects to the scope of "Accused Products," as set forth in the General Objections (¶ 23). NETGEAR further objects to the request for testimony on "Related Products," as set forth in the General Objections (¶ 27).

**RESPONSE:** NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR will designate, at the

9

40. The identity and location of Documents concerning each of the foregoing topics.

**SPECIFIC OBJECTIONS**: In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR further objects to this Topic as overly broad and unduly burdensome because it seeks testimony on an unbounded set of documents.

**RESPONSE**: NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR refers to its Responses to each individual Topic herein.

41. Core Technical Documents Produced by Netgear.

**SPECIFIC OBJECTIONS**: In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR objects to WSOU's use of the term "Core Technical Documents" as undefined and, thus, vague and ambiguous. NETGEAR further objects to this Topic to the extent it is duplicative of other Topics, including Topic Nos. 34-36. NETGEAR further objects to this Topic as overly broad and unduly burdensome because the Topic potentially seeks testimony on numerous documents produced in these cases. It is unreasonable to request testimony regarding such a large and disparate set of information.

**RESPONSE**: NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR will not designate a witness for this Topic.

42. Core Technical Documents that disclose the following functionalities:

   a. Design and implementation of 802.11ac standard, including but not limited beamforming.

35

    b. Design and implementation of MU-MIMO and SU-MIMO communication, including via 802.11ac.

    c. Design and implementation of channel sounding process.

    d. Design and implementation of explicit beamforming.

    e. Design and implementation of calculation of steering matrix to direct transmissions towards a beamformer.

    f. Design and implementation of space division multiple access.

    g. Design and implementation of policies and actions.

    h. Design and implementation of TailDrop or WRED and how it is used to discard packets.

    i. Design and implementation of how social media credentials are used to determine and allow access.

**SPECIFIC OBJECTIONS**: In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR objects to WSOU's use of the terms "Core Technical Documents" and "policies and actions" as undefined and, thus, vague and ambiguous. NETGEAR further objects to this Topic's request for "Core Technical Documents that disclose" particular "functionalities" because the meaning of "disclose" is not certain in this context. NETGEAR further objects to this Topic as overly broad to the extent it seeks information regarding "functionalities" that are not relevant to this suit. NETGEAR further objects to this Topic as seeking (i) information that is within the possession of WSOU or third parties and/or (ii) expert opinion. For example, NETGEAR's production is searchable for keywords related to the list of "functionalities" within this Topic. NETGEAR more particularly objects to this Topic's list of "functionalities" to the extent it requests expert opinion testimony detailing how NETGEAR

36

products function or describing the list of "functionalities" within this Topic. NETGEAR further objects to this Topic as more properly addressed through other discovery mechanisms, such as reviewing the Core Technical Documents themselves, which may "disclose" the "functionalities." NETGEAR further objects to this Topic as overly broad and unduly burdensome because the Topic seeks testimony on numerous documents produced in these cases. It is unreasonable to request testimony regarding such a large and disparate set of information. NETGEAR further objects to this Topic to the extent it is duplicative of other Topics, such as 1, 35, and 41.

**RESPONSE**: NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR will not designate a witness for this Topic.

**43.    Third-parties that possess information regarding core technical documents or information regarding Topic No. 42.**

**SPECIFIC OBJECTIONS**: In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR objects to WSOU's use of the term "core technical documents" as undefined and, thus, vague and ambiguous. NETGEAR further objects to this Topic's request for "third-parties most knowledgeable about" core technical documents as more appropriately sought through other means, such reviewing the core technical documents themselves, which may identify third parties, or through interrogatories. NETGEAR further objects to the phrase "or information" as vague. NETGEAR further objects to this Topic as seeking information that is within the possession of WSOU or third parties. The list of "functionalities" listed in Topic 42 contains generic descriptors of technology and standards for which WSOU and NETGEAR are equally able to seek out knowledgeable third parties.

**RESPONSE:** NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR will not designate a witness for this Topic.

**44.   Persons at Netgear knowledgeable regarding Topic Nos. 42-43.**

**SPECIFIC OBJECTIONS:** In addition to its General Objections, which are incorporated herein by reference as if set forth in their entirety, NETGEAR objects to WSOU's use of the terms "Core Technical Documents" and "core technical documents" as undefined and, thus, vague and ambiguous. NETGEAR further objects to this Topic's request for "persons at Netgear knowledgeable regarding Topic Nos. 42-43" as more appropriately sought through other means, such as interrogatories. NETGEAR further objects to this topic as not properly limited in scope and time, and as overbroad in its request for all persons "knowledgeable." NETGEAR further objects to this topic because NETGEAR cannot determine the meaning of "knowledgeable" regarding the large set of documents, technologies, and standards possibly within the scope of Topic Nos. 42-43.

**RESPONSE:** NETGEAR incorporates herein all of its General Objections and Specific Objections. Subject to its General and Specific Objections, NETGEAR will not designate a witness for this Topic.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Amr O. Aly<br>JENNER & BLOCK LLP<br>1155 Avenue of the Americas<br>New York, NY  10036<br>(212) 891-1600<br><br>Lisa M. Schoedel<br>Yusuf Esat<br>Mitchell L. Denti<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, IL  60654-3456<br>(312) 222-9350<br><br>April 15, 2022 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jennifer Ying*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jying@morrisnichols.com<br><br>*Attorneys for Defendant* |

39

**CERTIFICATE OF SERVICE**

       I hereby certify that on April 15, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE 19806<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Jonathan K. Waldrop, Esquire<br>Darcy L. Jones, Esquire<br>Marcus A. Barber, Esquire<br>ThucMinh Nguyen, Esquire<br>John W. Downing, Esquire<br>Heather S. Kim, Esquire<br>KASOWITZ BENSON TORRES LLP<br>333 Twin Dolphin Drive, Suite 200<br>Redwood Shores, CA 94065<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Shelley Ivan, Esquire<br>Noah P. Dorman, Esquire<br>KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, NY 10019<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Paul G. Williams, Esquire<br>KASOWITZ BENSON TORRES LLP<br>1230 Peachtree Street, NE, Suite 2445<br>Atlanta, GA 30309<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |

                                              */s/ Jennifer Ying*

                                              Jennifer Ying (#5550)